IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KEVIN L. BALLARD,<br><br>        Plaintiff,<br><br>   vs.<br><br>TAGGERT BOYD;<br>SHANE THURMAN;<br>JAIRO CEBILES;<br>MICHAEL KENNY;<br>DANIAL DANAHER;<br>DANIAL HOLAN; and<br>BRIAN DAHLSTEN,<br><br>        Defendants. | 8:22CV90<br><br><br>**MEMORANDUM<br>AND ORDER** |

Plaintiff, Kevin L. Ballard ("Ballard"), a state prisoner currently incarcerated at the Tecumseh State Correctional Institution, filed his Complaint (Filing 1) on March 7, 2022, and has been granted leave to proceed in forma pauperis. The court will now conduct an initial review of Ballard's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. SUMMARY OF COMPLAINT

Plaintiff is bringing suit under 42 U.S.C. § 1983 regarding an incident that occurred on June 6, 2019, while he was confined at the Diagnostic and Evaluation Center ("DEC") in Lincoln, Nebraska. Ballard claims a correctional officer used excessive force in breaking up an altercation between himself and another inmate, causing him to suffer a broken hand and a traumatic head injury. Plaintiff also claims he did not receive adequate medical treatment for his injuries at DEC or when he was subsequently transferred to the adjacent Lincoln Correctional Center ("LCC").

The court takes judicial notice that this action is directly related to Case No. 4:20CV3046, which Ballard voluntarily dismissed without prejudice. That case was permitted to proceed to service of process against three defendants in their individual

capacities only: Counselor Thurman (now identified as Shane Thurman),[1] a case manager at DEC, for using excessive force; Taggart Boyd,[2] the warden of DEC and LCC, for failing to protect Ballard from Thurman's use of excessive force; and Doctor Danaher (now identified as Danial Danaher),[3] a doctor at LCC, for failing to provide adequate medical care.[4] In the present action, Ballard adds four corrections officers at DEC as defendants, in their individual capacities only.

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to conduct an initial review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C.A. § 1915A(a). On such initial review, the court must dismiss the complaint if it: "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C.A. § 1915A(b). *See also* 28 U.S.C. § 1915(e)(2)(B) (requiring dismissal of in forma pauperis complaints "at any time" on the same grounds as § 1915A(b)).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[1] This Defendant is also referred to as "Thueman" in the Complaint.

[2] Ballard misspells the warden's first name as Taggert.

[3] The correct spelling of Dr. Danaher's first name is Daniel. His last name is given various spellings throughout the Complaint.

[4] The previous case was filed on April 27, 2020. After the defendants moved for summary judgment, Ballard filed a motion to dismiss. When the defendants did not object, the court granted the motion and entered judgment dismissing the case without prejudice on August 13, 2021.

("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

### III. DISCUSSION OF CLAIMS

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). In this case, Ballard is claiming Defendants, while acting as state employees, violated his rights under the Eighth Amendment.

#### A. Excessive Force (Defendant Thurman)

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)). This inquiry turns on "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted," from which "inferences may be drawn as to whether the use of force could

3

plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Id.* (quoting *Whitley*, 475 U.S. at 321).

Ballard alleges another inmate attacked him in the DEC recreation yard on the morning of June 6, 2019, and he was forced to defend himself. Unit staff called for back-up to break up the altercation. When security staff arrived, chemical agents were deployed. Ballard broke off from the altercation and surrendered himself to staff, but Defendant Thurman forcibly tackled him. Thurman then became enraged, grabbed Ballard's head, and slammed it into the concrete. Ballard's hand was also broken. (Filing 1, ¶ 10.)

The court finds for purposes of initial review that the foregoing allegations contain sufficient facts to state a plausible § 1983 claim against Defendant Thurman for the use of excessive force, in violation of Ballard's Eighth Amendment rights.

### B. Failure to Protect (Defendant Boyd)

A prison official, such as Warden Boyd, "may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondeat superior theory." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007) (quoting *Ambrose v. Young,* 474 F.3d 1070, 1079 (8th Cir.2007)). A prison official, nonetheless, violates the Eighth Amendment by failing to protect an inmate from a substantial risk of serious harm to the inmate. *Id.* (citing *Blades v. Schuetzle,* 302 F.3d 801, 803 (8th Cir. 2002)).

"A violation of the Eighth Amendment based on a failure to protect has two parts. First, the conditions that result from the failure to protect the inmate must pose a substantial risk of serious harm to the inmates…. Second, the subject prison official must have exhibited a sufficiently culpable state of mind, that is, the prison official must have been deliberately indifferent to a substantial risk of serious harm to the inmates." *Id.* (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. This requisite

4

state of mind is akin to recklessness, which is "more blameworthy than negligence," yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmates. *See id.,* 511 U.S. at 835.

Ballard fails to state an actionable claim for relief against Warden Boyd. He alleges that "Thurman was never trained right" and "was never reprimanded for his violent actions on June 6th 2019," (Filing 1, ¶ 19),[5] but has alleged no facts showing that, prior to this incident, Boyd "[r]eceived notice of a pattern of unconstitutional acts committed by subordinates" and "[d]emonstrated deliberate indifference to or tacit authorization of the offensive acts[.]" *Parris v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010); *Moser v. Frakes*, No. 8:18CV551, 2019 WL 3219463, at *4 (D. Neb. July 17, 2019) (holding plaintiff failed to allege plausible Eighth Amendment claim against prison warden based on a failure to supervise or train an employee). An after-the-fact failure to reprimand Thurman could not have been a contributing cause of Ballard's injuries.

Ballard also generally alleges that the inmate population at DEC was over design capacity, and the facility was understaffed (Filing 1, ¶¶ 21, 24), but even if Boyd may have acted unreasonably by failing to remedy these conditions, they do not make a plausible showing that Boyd inferred that there was a substantial risk of serious harm to Ballard. *See Moser*, 2019 WL 3219463, at *4 (dismissing deliberate indifference claim based on general risk of harm due to overcrowding and understaffing); *Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005) (finding overcrowding and understaffing showed jail officials may have been negligent but did not "rise to the level of deliberate indifference"), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

### C. Inadequate Medical Care (Defendant Danaher and Others)

The Eighth Amendment's prohibition on cruel and unusual punishment also protects prisoners from deliberate indifference to objectively serious medical needs. *See Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000). An objectively serious

---

[5] By contrast, Ballard alleged in the previous action that Thurman had been the subject of a significant number of complaints for excessive force for which he had not been reprimanded or required to receive training.

medical need is one "diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008) (internal quotation marks omitted). A plaintiff claiming deliberate indifference must show an objectively serious medical need that the "defendant actually knew of, but deliberately disregarded." *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir. 2009). "In order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Vaughn v. Gray,* 557 F.3d 904, 908 (8th Cir.2009) (internal quotation omitted). "This onerous standard requires a showing more than negligence, more even than gross negligence, but less than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Thompson v. King*, 730 F.3d 742, 746-47 (8th Cir. 2013) (internal quotation marks and citations omitted).

Ballard alleges he was taken to the Specialized Nursing Facility ("SNF") at DEC after the incident, where he was informed there were no doctors on site to treat him. After about an hour he was taken from a holding cell at SNF and moved to LCC, where he was placed in solitary confinement. Defendant Michael Kenny, a lieutenant at DEC, told Ballard he wanted him out of his prison because Ballard had struck a guard, which Ballard denies. Defendant Jairo Cebiles,[6] a sergeant of DEC, told Ballard he had seen on video footage that Ballard struck a guard. Ballard claims he pleaded with Kenny and Cebiles to let him stay at DEC until he could be seen by a doctor, but they refused. (Filing 1, ¶ 11.)

Ballard alleges he did not receive requested medical treatment until June 9, 2019, when he was seen by Doctor Danaher. The doctor did not order an x-ray of Ballard's hand or a scan of Ballard's head; he only shined a light in Ballard's eyes and ordered an icepack. "Nothing was done to determine the true extent of Ballard's injuries," even though "his symptoms were worsening." (Filing 1, ¶ 13.) Ballard alleges he complained to Danaher that his hand was broken and it was also reported to Danaher that Ballard vomited when he attempted to stand. (Filing 1, ¶ 26.)

---

[6] This Defendant is also referred to as "Jario Cebieles" in the Complaint.

Ballard alleges a misconduct hearing was held on June 11, 2019, where he was charged with being aggressor and hitting a staff member during the altercation. He alleges Defendant Danial Holan,[7] a corporal at DEC, was "cohursed [*sic*] into saying Ballard touched him on the forehead" and "made it very clear Ballard punched him." Ballard also alleges Defendant Brian Dahlsten, another corporal at DEC, "witnessed this attack on Ballard and he even went along with his superiors shem [*sic*]." (Filing 1, ¶ 14.) Ballard was held in segregation for about 21 days, allegedly receiving very little attention during this time. (Filing 1, ¶ 15.)

Ballard alleges that on June 27, 2019, a physician at DEC, Dr. Houstead, learned of Ballard's condition and ordered that he be taken to the emergency department at Bryan West Hospital. A head scan was performed and Ballard was diagnosed with severe vertigo resulting from head trauma. Dr. Houstead then ordered that Ballard be transferred back to SNF at DEC for monitoring and that Ballard's hand be x-rayed. The x-ray confirmed the hand was broken and had not healed properly. Ballard was hospitalized for approximately five months under Dr. Houstead's care, but he continues to experience vertigo, dizziness, and nausea, has had numerous falls, must use a walker or wheelchair, and has limited use of his dominant hand. (Filing 1, ¶¶ 16, 17, 27.)

The court finds for purposes of initial review that the foregoing allegations contain sufficient facts to state a plausible claim against Defendant Danaher for deliberate indifference to Ballard's serious medical needs, in violation of Ballard's Eighth Amendment rights, but that no actionable claim is stated against Defendants Kenny, Cebiles, Holan, and Dahlsten. While Kenny and Cebiles moved Ballard from DEC to LLC, the facts alleged fail to show they had actual knowledge of Ballard's serious medical needs. Nor does Ballard allege any facts showing that Holan and Dahlsten had such actual knowledge.

Finally, to the extent Ballard is claiming he was wrongfully disciplined based on Holan's allegedly false testimony or Dahlsten's failure to speak up, which caused him to be kept in segregation for three weeks, the Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant

---

[7] This Defendant is also referred to as "Holen" in the Complaint.


hardships" that would give rise to a constitutionally protected liberty interest. *Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002); *Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir.2003) ("We have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship."). Thus, no due process claim may be maintained.

## IV. CONCLUSION

This case may proceed to service of process only on Ballard's claims against Defendants Shane Thurman and Daniel Danaher. All other claims will be dismissed without prejudice.

IT IS THEREFORE ORDERED:

1. This case shall proceed to service of process on the Eighth Amendment claim against Defendant Shane Thurman, for alleged used of excessive force, and on the Eighth Amendment claim against Defendant Daniel Danaher, for alleged deliberate indifference to Ballard's serious medical needs. All other claims and parties are dismissed without prejudice.

2. For service of process on Defendant Shane Thurman, <u>in his individual capacity</u>, the Clerk of Court is directed to complete a summons form and a USM-285 form using this address:

    Nebraska Diagnostic and Evaluation Center
    3220 West Van Dorn Street
    P. O. Box 22800
    Lincoln, NE 68542-2800

3. For service of process on Defendant Daniel Danaher, <u>in his individual capacity</u>, the Clerk of Court is directed to complete a summons form and a USM-285 form using this address:

    Lincoln Correctional Center
    3216 West Van Dorn Street
    P. O. Box 22800
    Lincoln, NE 68542-2800

4. The Clerk of Court is further directed to issue a summons form and USM-285 form for each Defendant using this address:

> Office of the Nebraska Attorney General
> 2115 State Capitol
> Lincoln, NE 68509

*See* Neb. Rev. Stat. § 25-511 ("Any employee of the state, as defined in section 81-8,210, sued in an individual capacity for an act or omission occurring in connection with duties performed on the state's behalf, regardless of whether the employee is also sued in an official capacity, must be served by serving the employee under section 25-508.01 and also by serving the state under section 25-510.02.").

5. The Clerk of Court shall then forward the completed forms to the Marshals Service together with a sufficient number of copies of Plaintiff's Complaint (Filing 1) and this Memorandum and Order.[8]

6. **The Marshals Service shall serve Defendants Shane Thurman and Daniel Danaher, in their individual capacities, at the addresses of the Nebraska Department of Correctional Services facilities shown above**,

---

[8] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory); Fed. R. Civ. P. 4(c)(3) (court must order that service be made by United States Marshal if plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915). *See, e.g., Beyer v. Pulaski County Jail*, 589 Fed. App'x 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).

by certified mail or other authorized method of service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01.

7. **In addition, the Marshals Service shall serve Defendants Shane Thurman and Daniel Danaher, in their individual capacities, at the Office of the Nebraska Attorney General, 2115 State Capitol, Lincoln, NE 68509**," by certified mail or other authorized method of service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. §§ 25-510.02 and 25-511.

8. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

9. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process. The Clerk of Court shall set a case-management deadline accordingly.

10. The Clerk of the Court is directed to set the following pro se case management deadline: **July 5, 2022**: check for completion of service of process.

11. Plaintiff shall keep the court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal without further notice.

Dated this 4th day of April, 2022.

                                                BY THE COURT:

                                                *Richard G. Kopf*
                                                Richard G. Kopf
                                                Senior United States District Judge