IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KEVIN L. BALLARD,<br><br>    Plaintiff,<br><br>vs.<br><br>SHANE THURMAN and<br>DANIAL DANAHER,<br><br>    Defendants. | 8:22CV90<br><br><br>**MEMORANDUM<br>AND ORDER** |

  Plaintiff, Kevin L. Ballard ("Ballard"), a state prisoner who is currently confined at the Tecumseh State Correctional Institution, brings this civil action under 42 U.S.C. § 1983 regarding an incident that occurred on June 6, 2019, while he was confined at the Diagnostic and Evaluation Center in Lincoln, Nebraska. Ballard claims Defendant Shane Thurman ("Thurman"), a correctional officer at DEC, used excessive force in breaking up an altercation between Ballard and another inmate, causing Ballard to suffer a broken hand and a traumatic head injury. Ballard also claims Defendant Daniel Danaher ("Danaher"),[1] a physician assistant at the Lincoln Correctional Center, provided inadequate medical treatment for his injuries.

  Defendants have moved for summary judgment, claiming (1) Ballard failed to exhaust his administrative remedies and (2) they have qualified immunity. Filing 32. Ballard has not responded directly to the motion for summary judgment, but has instead filed a one-page "Objection and Motion for Judgment on the Pleadings," in which he asserts that judgment should be entered against Defendants because the case number shown on their Answer (Filing 13) is incorrect. Filing 36.[2] Ballard apparently is contending that Defendants' answer is a nullity because of this defect.

---

  [1] Danaher's first name is spelled incorrectly in Ballard's complaint.

  [2] Ballard cites Rules 9(b) and 12(b),(c),(g) and (h)(1) of the Federal Rules of Civil Procedure. Rule 12(c) provides that a party may move for judgment on the

The case number shown on Defendants' Answer, which was filed on May 4, 2022, is 4:22CV90 instead of 8:22CV90. This pleading was properly docketed in Case No. 8:22CV90 despite the misnumbering.[3] Ballard does not claim to have been prejudiced by this trivial clerical error, nor could he have been misled.[4] Ballard even filed on objection to Defendants' Answer on June 2, 2022, claiming it was premature (but not raising any other objection). See Filing 14. Ballard's objection and motion are frivolous, and will be denied in all respects.[5]

## I. SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is

---

pleadings after the pleadings are closed. The court generally may not consider matters outside the pleadings on a motion for judgment on the pleadings. *von Kaenel v. Armstrong Teasdale, LLP*, 943 F.3d 1139, 1143 (8th Cir. 2019). The court may, however, consider some public records, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings. *Id.*; *see Buckley*, 9 F.4th at 760; *see also Planet Sub Holdings, Inc. v. State Auto Prop. & Cas. Ins. Co., Inc.*, 36 F.4th 772, 776 (8th Cir. 2022). That includes court records from previous proceedings. *See Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

[3] The court surmises the error occurred because the answer was patterned after filings made by Defendants in a previous lawsuit, Case No. 4:20CV3046, which Ballard voluntarily dismissed after Defendants moved for summary judgment in that case.

[4] The first digit indicates whether a case was filed in Lincoln ("4") or Omaha ("8"), the number after the colon is the year of filing (2022 in this case), CV shows it is a civil case, and 90 means it was the ninetieth civil case filed in Omaha in 2022. Case filings in Lincoln are numbered sequentially beginning with 3001 each year, so there is no actual case with the number 4:22CV90.

[5] Even disregarding Defendants' Answer, they still are entitled to the entry of summary judgment. "A defending party is not required by the rule to file an answer before moving for summary judgment," Wright & Miller, 10A *Fed. Prac. & Proc. Civ.* § 2718 (4th ed.), and, "[a]s is clear by Rule 56(c)'s express requirement that the nonmoving party must support its factual positions, the nonmovant cannot satisfy that burden by relying on mere allegations in the pleadings to show that there is a triable issue," *id.*, § 2727.2.

2

sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a).

In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party and gives that party "the benefit of all reasonable inferences that can be drawn from the record." *State Nat'l Ins. Co., Inc. v. Washington Int'l Ins. Co.*, 304 F. Supp. 3d 827, 831-32 (D. Neb. 2018) (quoting *Minnesota ex rel. N. Pac Ctr., Inc. v. BNSF Ry. Co.*, 686 F.3d 567, 571 (8th Cir. 2012)). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue; the court merely determines whether there is evidence creating a genuine issue for trial. *See Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999).

"There is a genuine dispute when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (internal quotations and citations omitted). "A fact is material if it 'might affect the outcome of the suit.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial responsibility of informing the court of the basis for the motion, and must identify those portions of the record which the moving party believes show the lack of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the moving party does so, the burden then shifts to the nonmoving party, who "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment should be granted. *Smith-Bunge v. Wisconsin Cent., Ltd.*, 946 F.3d 420, 424 (8th Cir. 2019).

The initial burden on a moving party "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) ("The moving party can

satisfy its burden in either of two ways: it can produce evidence negating an essential element of the nonmoving party's case, or it can show that the nonmoving party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial."); *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (moving party need not produce evidence showing "the absence of a genuine issue of material fact.").

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.,* 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.,* 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042).

## II. SUMMARY JUDGMENT PROCEDURE

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

This court's local rules further specify that "[t]he moving party must include in the brief in support of the summary judgment motion a separate statement of material facts," which "should consist of short numbered paragraphs, each containing pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials that support the material facts stated in the paragraph." NECivR 56.1(a) (underlining omitted). The opposing

4

party's brief must include "a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). "Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed." *Id.*

A party's failure to comply with these requirements can have serious consequences: The moving party's "[f]ailure to submit a statement of facts" or "[f]ailure to provide citations to the exact locations in the record supporting the factual allegations may be grounds to deny the motion" for summary judgment. NECivR 56.1(a) (underlining omitted). On the other hand, "[p]roperly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(b)(1) (underlining omitted).[6]

Even though Ballard is proceeding pro se, he is bound by and must comply with all local and federal procedural rules. NEGenR 1.3(g); *see Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1067 (8th Cir. 2017) (status as pro se litigant does not excuse noncompliance with local rules regarding summary judgment).

### III. DISCUSSION

Defendants' brief includes a separate statement of material facts which complies with Rule 56.1(a)(1). See Filing 34, pp. 5-17. The court has carefully examined Defendants' evidence (Filing 35) and confirmed that their statements of fact have evidentiary support.[7] Because Ballard has failed to make any response to

---

[6] "Nebraska's rule concerning summary judgment procedure places clear requirements on the moving and opposing parties." *Tramp v. Assoc. Underwriters, Inc.*, 768 F.3d 793, 799 (8th Cir. 2014). "[T]he rules clearly require that [the opposing party] respond in kind, and in a specific fashion, to the statement of undisputed facts asserted by [the moving parties] in their motion for summary judgment." *Id.* (holding district court properly considered the movant's statement of facts admitted where opposing party did not comply with NECivR 56.1(b)(1)).

[7] Defendants request the court to enter an order pursuant to NECivR 7.5(a) sealing Exhibit 10 as listed the Index of Evidence in support of Defendants' Motion

Defendants' statement of materials facts, all of the facts stated therein are deemed admitted and accepted as true.

The Eighth Circuit has held that where, as here, an affirmative defense has been raised that a prisoner plaintiff failed to exhaust his administrative remedies before filing a § 1983 action, *see* 42 U.S.C. § 1997e(a), this issue must be resolved before a district court may proceed to address the merits of the case. *See Benjamin v. Ward Cty.*, 632 F. App'x 301 (8th Cir. 2016) (per curiam) ("[W]e conclude that the district court erred by proceeding to the merits of [the prisoner plaintiff's] claims without first determining whether he had exhausted administrative remedies that were available....") (collecting cases); *Pinder v. McDowell*, 714 F. App'x 612, 613 (8th Cir. 2018) (per curiam) (vacating judgment in favor of defendant and remanding to district court for determination of a pleaded defense of nonexhaustion).

As will be discussed below, the court finds that Ballard did not exhaust his administrative remedies with respect to the claims asserted against Defendants in this action, and therefore the action must be dismissed without prejudice and without the court reaching the merits of Defendants' other affirmative defense of qualified immunity.

### A. The PLRA's Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211

---

for Summary Judgment because this evidentiary material contains confidential and sensitive information. See Filing 33. The request will be granted.

(2007) (citing *Porter v. Nussle,* 534 U.S. at 524). "Nonexhaustion is an affirmative defense, and defendants have the burden of raising and proving the absence of exhaustion." *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015) (citing *Jones v. Bock*, 549 U.S. 199, 212 (2007)).

An inmate satisfies § 1997e(a) by pursuing "the prison grievance process to its final stage" to "an adverse decision on the merits." *Id.,* 781 F.3d at 451 (quoting *Burns v. Eaton,* 752 F.3d 1136, 1141 (8th Cir. 2014)). It does not matter that the inmate "subjectively believed that there was no point in his pursuing administrative remedies." *Id.* (quoting *Lyon v. Vande Krol,* 305 F.3d 806, 809 (8th Cir.2002) (en banc)). Significantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218 (2007). The only limit to § 1997e(a)'s mandate is that an inmate need exhaust only such administrative remedies as are "available." *Ross v. Blake*, 578 U.S. 632, 648 (2016).

## B. Applicable Prison Regulations

Pursuant to its authority under Neb. Rev. Stat. §§ 83-4,111 and 83-4,135 through 83-4,139, the Nebraska Department of Correctional Services must "adopt and promulgate rules and regulations to establish criteria for justifiably and reasonably determining which rights and privileges an inmate forfeits upon commitment and which rights and privileges an inmate retains," including grievance procedures. NDCS adopted and promulgated 68 Neb. Admin. Code, ch. 2 to carry out its obligations regarding inmate grievance procedures. Defendants' Statement of Material Facts ("SMF") ¶ 54; Filing 35-1, ¶ 4.[8]

NDCS also created AR 217.02, an internal policy document to guide inmates and NDCS staff in how the grievance process is implemented. SMF ¶ 54; Filing 35-1, ¶ 4. Copies of the regulations and AR 217.02 are available in the Inmate Resource Centers at every NDCS facility, and NDCS inmates receive orientations and verbal explanation of the NDCS grievance process. SMF ¶¶ 55-57; Filing 35-1, ¶ 5.

---

[8] Filing 35-1 is the Declaration of Nadine Forgey, NDCS's Grievance Administrator.

7

NDCS maintains a three-step grievance process. SMF ¶ 58; Filing 35-1, ¶ 7. All grievance forms (Informal, Step-One, and Step-Two) are available in the housing units at all NDCS facilities. SMF ¶ 70; Filing 35-1 ¶ 21.

The first step in the grievance process is for an inmate to attempt informal resolution of his or her grievance with designated NDCS unit staff by submitting an Informal Grievance Resolution form. SMF ¶ 58; Filing 35-1, ¶ 8. Informal Grievance Resolution forms must be filed within 3 calendar days of the incident being grieved. SMF ¶ 61; Filing 35-1, ¶ 8. Upon receipt of an Informal Grievance Resolution form, NDCS unit staff conduct an investigation and issue a written response to the inmate. SMF ¶ 62; Filing 35-1, ¶ 9.

If an inmate is not satisfied with unit staff's response to their Informal Grievance Resolution, he or she may proceed with the second step of the NDCS grievance process by filing a Step-One Grievance Form with the facility warden or designee. The Step-One Grievance must be submitted on a Step-One Grievance form. The Step-One Grievance form must be filed within 15 calendar days of receipt of the informal grievance response or if no response was received, within 20 calendar days of the incident giving rise to the grievance. The Informal Grievance Resolution Form and response, if received, must be attached to the Step-One Grievance Form. SMF ¶ 63; Filing 35-1, ¶ 10.

If an inmate disagrees with the warden or designee's response to a Step-One Grievance, he or she may proceed with the third and final step of the NDCS grievance process and file a Step-Two Grievance with the Director of NDCS or designee. Step-Two Grievances must be submitted on the Step-Two Grievance Form and filed within 10 calendar days of receipt of the warden or designee's response to the Step-One Grievance. The Informal Grievance Form and Step-One Grievance Form and responses, if any, must be attached to the Step-Two Grievance Form. SMF ¶ 65; Filing 35-1, ¶ 13.

Inmates incarcerated in an NDCS facility do not exhaust their administrative remedies until the inmate timely files and receives an adverse decision to his or her Step-Two Grievance form. *Novascone v. Daniel Danaher, P.A., N.D.C.S.*, No. 8:19CV201, 2022 WL 3159754, at *8 (D. Neb. Aug. 8, 2022); *Davlin v. Miller*, 2012 WL 3991374, at *3 (D. Neb. Sept. 11, 2012); *Keup v. Hopkins*, 2008 WL 427556,

at *4 (D. Neb. Feb. 14, 2008); *Williams v. NSP Med. Servs. Unit*, 2007 WL 1362890, at *1 (D. Neb. Apr. 20, 2007).

### C. Nonexhaustion of Ballard's Claim Against Thurman

"Under the PLRA, an inmate must exhaust available administrative procedures before filing suit even if he is complaining of an isolated incident of excessive force and is requesting a remedy (e.g. damages or employee termination) which cannot be obtained through the prison grievance process." *Ajamu v. Douglas Cnty. Corr. Ctr.*, No. 8:05CV277, 2007 WL 3112451, at *3 (D. Neb. Oct. 22, 2007) (citing *Foulk v. Charrier,* 262 F.3d 687, 695 (8th Cir. 2001)).

The undisputed evidence establishes that Ballard never filed an Informal Grievance form, Step-One Grievance Form, or Step-Two Grievance Form alleging use of excessive force by Thurman on June 6, 2019. SMF ¶ 80; Filing 35-1, ¶ 29; Filing 35-2 (Exhibit 1 to Forgey Declaration).[9]

Consequently, Ballard's excessive force claim against Thurman must be dismissed without prejudice. *See Langford v. Norris*, 614 F.3d 445, 457 (8th Cir. 2010) (dismissals for failure to exhaust under § 1997e(a) must be without prejudice); *Jirak v. Terris*, 668 F. App'x 680, 681 (8th Cir. 2016) (same).

### D. Nonexhaustion of Ballard's Claim against Danaher.

Exhaustion of claims for inadequate medical care is achieved by utilizing the NDCS grievance process. *See, e.g., Novascone*, 2022 WL 3159754, at *8; *Davlin*, 2012 WL 3991374, at *3 *Williams*, 2007 WL 1362890, at *1. To exhaust administrative remedies for his claim against Danaher for inadequate medical care related to injuries allegedly received on June 6, 2019, Ballard was required to engage in all three steps of the grievance process prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits").

---

[9] Filing 35-2 is a log of all grievances filed by Ballard between June 1, 2019, and April 2021. See Filing 35-1, ¶ 23.

The first step in the grievance process, filing an Informal Grievance Resolution form must be completed within 3 calendar days of the incident being grieved. SMF ¶ 61; Filing 35-1, ¶ 8. Ballard did not file any Informal Grievance Resolution forms of any kind between June 6, 2019, and July 1, 2019. SMF ¶ 74; Filing 35-1, ¶ 24; Filing 35-2.

On July 1 or July 5, 2019, Ballard filed his first Informal Grievance Resolution form (GR 2019-5713) for inadequate medical care related to an alleged head injury sustained on June 6, 2019. NDCS responded to this Informal Grievance Resolution form on July 15, 2019. SMF ¶ 77; Filing 35-1, ¶ 25; Filing 35-2; Filing 35-3 at 2 (Exhibit 2 to Forgey Declaration).

Following NDCS's response to the Informal Grievance Resolution form, Ballard never completed a formal Step-One Grievance. Instead, he attempted to skip the Step-One Grievance and file a Step-Two Grievance on October 28, 2019, more than 3 months after the Informal Grievance Resolution form was acted upon. The Step Two Grievance was dismissed for failure to follow the grievance policy, including failure to file a Step-One Grievance Form. SMF ¶ 78; Filing 35-1, ¶¶ 26-27; Filing 35-2; Filing 35-4 (Exhibit 3 to Forgey Declaration). As previously stated, an inmate is required to file a Step-One Grievance within 15 calendar days of the response to an Informal Grievance Resolution form. Thus, Ballard has not exhausted his administrative remedies for the claim against Danaher for alleged inadequate medical care related to Ballard's head injury.

On October 28 or 30, 2019, Ballard filed an Informal Grievance Resolution form (GR 2019-9706) alleging for the first time inadequate medical care for his hand. It was responded to on October 30, 2019. SMF ¶ 79; Filing 35-1, ¶ 28; Filing 35-5 at 6 (Exhibit 4 to Forgey Declaration). Between March 6 and 10, 2020, Ballard attempted to file both a Step-One Grievance form and a Step-Two Grievance form related to his alleged hand injury. These forms were returned because they were not filed within 15 days after the NDCS response on October 30, 2019. Filing 35-1, ¶ 28; Filing 35-5 at 1-5. Thus, Ballard has not exhausted his administrative remedies for his claim against Danaher for the alleged inadequate medical care related to his hand injury.

10

In summary, 42 U.S.C. § 1997e(a) precludes Ballard from suing Danaher for alleged inadequate medical care stemming from his alleged June 6, 2019 injuries, and his § 1983 claim must be dismissed without prejudice.

### IV. CONCLUSION

This action will be dismissed without prejudice for Ballard's failure to exhaust his available administrative remedies regarding the claims of excessive force and inadequate medical care. The court does not reach the issue of whether Defendants are entitled to qualified immunity.

IT IS THEREFORE ORDERED:

1. Plaintiff's Objection and Motion for Judgment on the Pleadings (Filing 36) is denied in all respects.

2. Defendants' Motion to Seal Exhibits (Filing 33) is granted.

3. Defendants' Motion for Summary Judgement (Filing 32) is granted, and Plaintiff's Complaint is dismissed without prejudice.

4. Judgment shall be entered by separate document.

Dated this 1st day of December, 2022.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge